The next case is N. Ray John L. Couvaras, 2022, 1489. Mr. Sandell. Good morning. You may have pleased the court. Lawrence Sandell on behalf of the appellant, Dr. John L. Couvaras. The director argues that granting Dr. Couvaras his patent would withdraw an obvious hypertension treatment from the public domain. But before Dr. Couvaras' research endeavors, his treatment simply never existed. The invention was not in the public domain because it was never in any domain. Well, both types of compounds were known to be anti-hypertensive and the prior art showed that it was common or permissible or desirable to combine anti-hypertensives at times. And so this is simply using two known types of compounds to treat hypertension. And from the 10,000-foot view, I would agree with you. But when you get into the actual facts and the detail in this case, nobody has ever discovered or even contemplated that these two compounds, when combined in a particular situation, could cause a vasodilatory effect. Now, I don't know if it was... So Dr. Couvaras discovered a mechanism that the treatment of hypertension with these types of compounds was known or obvious? I would disagree that they were known or obvious. Each of the compounds was out there. The general concept of a multidrug treatment for hypertension also was out there. But the fact remains that there were 30 years where these both existed. And this is an extreme... And they both were known to treat hypertension? Both were known separately to treat hypertension in the art. And there was prior art suggesting combining different types of hypertension medications for... There is prior art talking about that, of course, not these particular ones, but in general, yes, multidrug treatment of hypertension. So when you start with that 10,000-foot view, I do understand why we're here. But as you... But down on the ground. But down on the ground, once you start looking at what's there, is that Dr. Couvaras... Dr. Couvaras developed... He recognized a problem as to... There are two modalities potentially for treating hypertension. So we could start with that. One is combating constriction. And so this is what ARBs do, which is one of the two compounds. And the other compound was GABA. And the prior art taught that GABA does not aid in And I'll use an analogy, even though it's a step away, but I think it can help clarify this. So we have a screen door, and you want that screen door to be closed, to be normotensive. When the screen door is open, it's a hypotensive patient. Constriction is a rock preventing this door from closing. You remove the rock, you remove the constriction. Your claims was like increasing prostacycline release. Correct. This was inherent, right? Correct. So we don't argue specifically against that this combination will do it. It's not our strongest argument. In the typical case, that will occur. But it is a comprising claim that we're focused on. So there's always the possibility that another substance could prevent this from happening, which would undermine that inheritance. Is that a new argument, that this is a comprising claim? We haven't addressed that specifically, so I can... Do you agree it's necessarily so that this is the mechanism, setting aside your comprising argument? Yeah, this is the mechanism by which it works. And this is where I would pull in Honeywell, and why Honeywell is incredibly important to show here that this was an unexpected, an unexpected effect. It was an unknown effect, and it had an unexpected benefit. Do you think Honeywell says that when you combine two multiple references, or modify a reference, and then as modified, that's when you have the inherent property? That is, it's necessarily so that it works through this mechanism, that if it's an unexpected inherent property, I guess, that that could, in some cases, show that there wouldn't have been motivation to combine? Is that how you read Honeywell? That's my understanding. It's... That is my understanding. But even if that is not your understanding, you disagree with that. No, it is mine, but the answer I have with that is, well, here, even if that's so, why isn't there motivation to combine, as the board found, supported by substantial evidence, that there's motivation to combine for their reason to... Because both of these drugs individually were known to treat hypertension. So why wouldn't combining them, you know, you combine them in order to improve hypertension? Even if you don't know the mechanism, which is inherent. That's right. So I guess I see that initial gloss, of course, but I think it's a little bit different. And I think that the cardiac case talks about this a bit when you're in this medical space. There are questions about drug interaction, and so on and so forth, that you don't just take a... Create a random cocktail of drugs that exist and slam them together. And I feel that this is sort of the point where I would turn towards the secondary considerations of non-obvious to rebut this motivation and to establish that the invention overall was non-obvious. And, you know, I raised the length of time considering first, even though it can't alone establish the finding of non-obvious, because I think that is particularly compelling. There's no dispute that for 30 years, these two compounds existed. They were never put together. And this is also a field where there are billions of dollars in pharmaceutical sales every year. 35,000 Americans die every year. And no one ever tried this. The board said you did not find any showing of unexpected results here. Yes. And actually, well, I don't actually think... They said they don't find unexpected results, but they also said that his discovery was unexpected. Ultimately, from my reading of that opinion, and I parsed it pretty carefully after the director's brief, was that they didn't believe there were unexpected results because no advantage was shown. The board also said, quoting one of our cases, CCPA case, the discovery of the cause of a problem does not always result in a patentable invention. Yes. Not always. But we believe this is a case where it should. Dr. Kovares discovered something that was entirely new. It was an entirely new modality treatment. Going back to the expected or unexpected, there's nothing in the record whatsoever showing that anybody had found a way before Dr. Kovares to increase prostacycline release. There is, in the record, evidence that two researchers, Dr. Bird and Dr. Magnus, had attempted to do this, and they had failed. And when it comes to unexpected and unknown, I would refer to the board's explicit finding that, quote, and this is appendix page 14, Dr. Kovares has established that the main beneficial result of his claimed invention is unexpected. And so were they... Read in context, since they say that it was not unexpected elsewhere, that's probably just a summary of what he said, that he said his testimony established this. What starts with he has established, and if you read through that paragraph and parse that, they say, you know, this was an unexpected discovery and result, but we don't consider it sort of an actionable unexpected result because there is no evidence that there is a benefit. And you agree there has to be a benefit. We agree there has to be a benefit, but we also submit quite strongly that benefit was established below. First, in the examiner's own brief to the board, he said that these discoveries, these discoveries, quote, are considered another advantage, and that's on appendix page 1237. The examiner argued to the board that this was an advantage. And so under those circumstances, it's unreasonable for the board to fault us for not inundating it with evidence as to the advantage. But we did give them that evidence below, and it was ignored. Can you cite a case where we ever held, upheld a claim to a mechanism of action that didn't produce any different result from what prior art treatments accomplished? I cannot, but I would submit that this is a different result. When you look at it at that 10,000-foot view again, hypertension, hypertension. But as you drill down and you look at the modality that Dr. Kouvaras was pursuing, he was pursuing release of a vasodilator compound, not merely trying to blunt the effects of constricting compounds like angiotensin II. So I think we're in a different category of what you're talking about, but no, I don't have a case that submits that. Do you have evidence that this mechanism in particular is more beneficial than, I'm just curious because, you know, you seem to be arguing that the combination wouldn't have been obvious because of the mechanism. Mm-hmm. So, you know, I think when you look at, is it more beneficial to promote vasodilation versus limit constriction, that's the question. What I would say is it's just the fact of having an additional modality in and of itself is a benefit. And by analogy, there may be antibiotics. Another way of reaching the same result, you mean? Well, not necessarily. It may be a better result for some people. But there isn't evidence that it was better, right? I guess what I'm saying is if you're comparing them as apples to apples, no. There was no evidence that it was better. Not specifically that it was better, but it doesn't have to actually be better. It just has to show an advantage and show a benefit here. You know, a certain cancer drug may be more effective at killing cancer cells, while at the same time, maybe patients may be less able to tolerate it. Is that better than the drug? Better or not, the claim was inherent. What is claimed is what was inherent. Mainly that these compounds together increased prostacycline expression. Please. Yeah, that being inherent, we turn, if the Honeywell argument is disregarded, we turn to the secondary considerations. Which the board didn't find. Well, the board did not find, and there are a few errors. To which we owe deference. You owe deference to the extent that they can show substantial evidence. But I would like to point out that a few things with respect to the recognition of a problem. The board basically said, the recognition lacks, quote, any non-obvious impact on treatment using antihypertensive agents. There is a non-obvious impact, and that impact is increasing the release of prostacycline. There's no basis for that. And also, that's not the rule. And when you look to the failure of others, which was rejected, that the director, I'm sorry, the board posits two arguments. First, they said, well, these two inventors didn't use the inventive product. Counsel, you're into your bottle time, which you can use or save. I'll continue, and hopefully have a little left over. But when it came to, they said, these researchers, Dr. Bird and Dr. Mannes, did not use the inventive product. But to show failure of others, they don't have to use the claimed invention and fail. They have to just try to find a solution for the problem that was solved by the applicant. They did not do that, but they tried to find the same solution. They tried to find a way to increase prostacycline release. And the other attack that they had was that these inventors weren't aware of the critical prior art. But again, here, the critical prior art is just these super well-known compounds. That really doesn't add much there. And when it comes to Teach-A-Way, I want to emphasize two references that the board entirely ignored. I think these are very important references. It's the Inouye reference and the Elliott reference. And the reason that these are important is because both of these references taught that GABA does not produce a vasodilatory response. The board then goes to Kjeldsen, if I'm pronouncing that correctly, to say that it teaches combining an ARB with something. But given that Dr. Kvaras was focused on the vasodilatory response and the prior art taught away from GABA for that purpose, there's no reason why Kjeldsen would have combined ARB with GABA. And I'll reserve my last minute. And we'll save a minute for you. Yes, ma'am. Follow-up? Your Honors, and may it please the Court. The board in this case weighed the strong evidence of obviousness, such as the prior art's disclosure of the same antihypertensive compounds to treat the same patient population and the prior art's disclosure to combine the claimed ARB antihypertensive agent with other antihypertensive agents for better treatment. They weighed that together with Kvaras' evidence of secondary considerations. And based on that weighing, properly found that the claims would be obvious. Now on appeal, Kvaras disputes almost every single one of the board's factual findings except inherency. So moving away from inherency, unless your Honors have any questions, I'll start with briefly the motivation to combine. Well, what about inherency? Do you think inherency is the best ground on which the board found obviousness? Well, the board found obviousness. And isn't inherency more of an anticipation issue than an obviousness issue? Well, as this court has found, if a result naturally occurs or necessarily results from the combination of two prior art teachings, that can be inherent. And that was the case here. Increased prostacyclin release will naturally result or naturally incur when you follow the prior art's instructions to administer an ARB and a GABA together to treat hypertension. Is this a novel kind of claim, claiming a mechanism that's inherent? I think there are other claims out there that people have tried to claim the mechanism of action. However, as your Honor recognized, the mechanism of action is just what happens when you administer two drugs together. And really trying to get a claim on a mechanism of action without any unexpected results where that combination would be obvious really would open up patentability to a lot of obvious drug combinations. The court did say that increasing the prostacyclin release is unexpected. How does that play under Honeywell? Why shouldn't we take that into account in determining whether the combination would have been obvious to one of our nearest and nearest? So under Honeywell, your Honor's right. You do say if a result is inherent, that doesn't mean we can disregard evidence of unexpected results. But here the board did exactly what Honeywell said, and they looked, are there any unexpected results? And they found affirmatively at appendix 14, the very first sentence, there are no unexpected results. We do have that statement that the board quoting Dr. Guevara said it's unexpected. You can look at this two different ways. Neither of them change the fact that the board determined correctly that there's no unexpected results. The first is that yes, okay, maybe the board said it is unexpected, but it doesn't meet the status of an unexpected result because it's not beneficial. And they said there's no better hypertensive treatment. There's no reduced dosages. And this court's precedent establishes that an unexpected result needs to be beneficial. And there was no evidence of that. And any evidence that was put in by Guevara's on reply simply has been forfeited. And that's best demonstrated by the fact that up until the opening brief and until the director set forth all of the cases that said there need to be an unexpected result, or excuse me, there need to be an unexpected benefit, Guevara said that's not a legal requirement. So in an opening brief at page 43, they said you don't need a benefit. When we set forth all of our cases explaining why this court has said unexpected results require a benefit, they've now conceded that the fact that a benefit is required. But you can see because they were coming from an incorrect legal position, they've forfeited any of the arguments that they're now making about why there is a benefit. That simply wasn't before the board. And so even if the board's sentence there says, okay, it's unexpected, meaning nobody would have accepted this, it does not say it's a benefit. And indeed they say there's no better control of hypertension, there's no reduced dosages. So the statement at the top remains true and supported by substantial evidence. The second way you can look at it is as Judge Dyke recognized, they most likely could have just been quoting Dr. Guevara and made a poor choice of words. And if you look at Dr. Guevara's declaration and all the arguments that were made below, Guevara's was tying unexpected to silence. There's nothing in the prior art, no one has ever done it, therefore it has to be unexpected. And so the board could have simply been saying, it's silent, but that's because it's inherent. But really there's no unexpected results because as the examiner found, there really was no comparison to anything. There was not commensurate in the scope of the claims. But as the board found, as a threshold matter, before you even get there, there's no benefit. And so you cannot establish unexpected results without a benefit. And so kind of coming back to the beginning of the question, which is, this is completely consistent with Honeywell. The board found it was inherent, but then went on and looked at whether or not there were unexpected results. Finding none, they found that secondary consideration did not weigh towards obviousness. With respect to the failure of others, the recognition of a problem, and the time, secondary considerations that counsel has emphasized. I'd say big picture, all of those kind of focus on the discovery, again, of a mechanism of action. None were but why the board and the examiner found it would have been obvious to combine these two treatments, which is the treatment of hypertension. So none relate to the motivation of why you would combine these. And therefore, the board correctly found as a big picture, none of these were probative of non-obviousness. A couple of specific points with respect to counsel's focus on the Byrd and Mangess case, or the Byrd and Mangess research. That was directed towards increasing prostacyclin released by manipulating angiotensin II levels. It was not directed towards the administration of any drugs or any antihypertensive agents. And therefore, it simply does not have nexus to the claims. A failure in the art that does not have nexus to the claims is not probative of non-obviousness. Someone could fail by saying, you know, I told my subjects to not sleep for two hours and or sleep only two hours a night. And therefore, I didn't increase prostacyclin release. That doesn't have nexus to the claims. The same way here, the failure in trying to increase prostacyclin release by manipulating angiotensin II levels is not an administration of an ARB, is not an administration of a GABA, is not focused on hypertensive patients. Therefore, it does not have nexus to the claims. Are you saying that the motivation to combine two known antihypertensives is simply the desire to improve treatment and the result here was the same except the discovery of the mechanism by which it occurred? That's correct, Your Honor. And that is consistent with this court's precedent in Kirkoven, which said the combination of two agents known for the same purpose to provide a third agent also known for the same purpose as obvious. But we also have the additional benefit here of the boards reliant on the Kelgen reference where it specifically directed you to combine an ARB, one of the claimed agents, with another antihypertensive and told you the reason why. This will get you better hypertensive treatment. So in addition to the standard obviousness under Kirkoven, we have the Kelgen reference. With respect to the recognition of a problem, again, this is a problem with whether or not we know  It does not dispute, it does not overcome the obviousness of combining these drugs for hypertension treatment. And that's what the board said when they said there's no obvious impact or non-obvious impact of this recognition of a problem. It was already obvious from another problem that was out there, which is the treatment of hypertension. And finally, to comment on the teaching away argument, the board properly found that the prior art did not teach away. With respect to the two references, the board did not specifically discuss, which is the Elliott and then Inouye reference. Those, like all the other evidence here of secondary considerations, was focused on the mechanism of action. It questioned whether or not GABA was a vasodilator. It did not question that GABA was a hypertensive treatment. Elliott and Inouye are one of the references relied on by the examiner. It says GABA is used for hypertension treatment. So the statement that it doesn't know how it works does not teach away from its use as a hypertensive agent. So unless your honors have any other questions, I'm happy to concede the rest of my time. Thank you, counsel. Mr. Sandel has a minute left. Just want to hit quickly again on the Honeywell concept. There is no evidence in the record at all that this wasn't an expected result. It's never been done before. Dr. Vars explained it at great detail in his declaration why it was new and that people were searching for a way to find out how to release prostacycline and nobody actually got there. All we're left with on that unexpected results is whether or not there was a benefit. And in the reply brief... When we're talking about unexpected results, the mechanism of action may have been unexpected. And that seems to be what the testimony of Dr. Kavara says. But the effect on the patient is not unexpected of the combination of these two drugs. Your Honor, I would posit that the release, and obviously this comes from the mechanism as well, but the actual release of a vasodilator, that different treatment modality was unexpected. And... It was unexpected that this combination would release a vasodilator? Yes, it was absolutely unexpected. There was nothing there. Angiotensin 2, and this is where the dichotomy between a vasodilator and compounds that rebut constriction or address constriction, that's where the distinction is. ARBs are known to stop constriction. GABA, according to the prior art, is doubted to have anything to do with vasodilation. But prostacyclin is a potent vasodilator and it has a totally different effect. And this distinction is also made clear even in the director's brief, I believe on page four, it talks about the anti-constriction effect of ARBs. And on page five, it talks about the vasodilatory effect of prostacyclin. And this distinction is critical. When you lump them together as antihypertensive agents, and don't pay attention to this distinction in the modalities of treatment, the obviousness case stands tall. But once you dig into the details and see how there is a distinction, the result is this vasodilatory effect. Counsel, we see a constriction here. It's constriction of time. Thank you, Your Honor. We'll take the case on to submission.